IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THERESA BARTLOW and
ROBERT A. MCBRIDE,
Individually and on behalf
of all others similarly situated,

        Plaintiffs,

v.

MEDICAL FACILITIES OF AMERICA, INC.,

        Defendant.

Civil No. 3:16 CV 572

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Come now the Plaintiffs Theresa Bartlow and Robert McBride, individually and on behalf of all other similarly situated individuals and by Counsel, and file this Class Action Complaint alleging the following claims against Defendant Medical Facilities of America, Inc. ("MFA"):

## NATURE OF THE CASE

1.      Plaintiffs bring this action against Defendant for violations of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681b(b)(2) and 1681b(b)(3).

2.      Defendant MFA operates nursing and rehabilitation facilities throughout Virginia and North Carolina. MFA staffs those facilities with consumers like Plaintiffs Bartlow and McBride.

3.      As part of its hiring process, MFA uses background reports generated by non-party Apex Background Check, Inc. to make employment decisions. Because such employment

decisions are based in whole or in part on the contents of the criminal-background reports, MFA is obliged to adhere to certain strictures of the FCRA.

4.    Apex operates a national database of public records, address histories, and related employment histories as a nationwide consumer reporting agency ("CRA"). Apex maintains an FCRA database to prepare and furnish consumer reports for employment and other purposes. MFA refused to hire Plaintiffs and other individuals based in whole or in part on the contents of Apex's consumer reports.

5.    In the employment context, "users" of consumer-background reports like MFA must abide by specific, easy-to-follow mandates under the FCRA designed to protect the privacy of consumers and provide them mandated information. Before obtaining a consumer report to be used in the hiring process, MFA must clearly and conspicuously disclose that intent to the consumer in a standalone document that consists solely of the disclosure, as well as obtain the consumer's written authorization to obtain that report.

6.    When using criminal-background reports for employment purposes, users must, before declining employment based in whole or in part on the contents of the report, provide job applicants like Plaintiffs with a copy of their respective reports as well as a written summary of their rights under the FCRA.

7.    Providing a copy of the criminal-background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

8.      Defendant is informed of the necessary rigors FCRA compliance imposes, as there are numerous sources from which companies can obtain guidance on the workings of the FCRA in the employment context.

9.      Plaintiffs bring nationwide, class claims against MFA under 15 U.S.C. § 1681b, because it, as an omission in its hiring process, failed to (1) clearly and conspicuously inform consumers like Plaintiffs—in a standalone document consisting solely of the disclosure—of its intent to obtain consumer reports about them, (2) obtain a valid authorization from consumers like Plaintiffs to obtain those reports, and (3) provide consumers like Plaintiffs with copies of their criminal-background reports or summaries of FCRA rights before taking an adverse action against them.

## PARTIES

10.     Plaintiff Theresa Bartlow is a "consumer" as defined by 15 U.S.C. § 1681a.

11.     Plaintiff Robert A. McBride is a "consumer" as defined by 15 U.S.C. § 1681a.

12.     Ms. Bartlow Resides in Richmond, Virginia, which is within the territorial confines of the Eastern District of Virginia, Richmond Division.

13.     Mr. McBride lives in Norfolk, Virginia, which is within the territorial confines of the Eastern District of Virginia.

14.     Defendant MFA is for-profit corporation conducting business and hiring employees in the Eastern District of Virginia and in the United States. MFA is also a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers," as those terms are defined by 15 U.S.C. § 1681a.

## JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

16. Venue is proper in the Eastern District of Virginia because Defendant is subject to personal jurisdiction in this District, maintains a place of business in this District, and makes employment decisions regarding individuals residing in this District. 28 U.S.C. § 1391(c). Further, Plaintiff Bartlow is a resident of this District and Division, and Plaintiff McBride is resident of this District.

## GENERAL FACTUAL ALLEGATIONS

17. During the class period, Apex furnished an employment-purposed consumer report concerning each Plaintiff to MFA for its use in evaluating each Plaintiff for possible employment. Apex furnished similar such reports to MFA for the same purposes during the class period.

18. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by consumer reporting agencies ("CRAs"), including public record information like criminal history. Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by prospective employers and other individuals.

19. Before users like MFA obtain consumer reports for use in their hiring processes, they must abide by several requirements of the FCRA. The Act first commands:

[A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document

that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2).

20.     The FCRA further mandates that a report user, before taking any adverse action (such as the denial of employment) based in whole or in part on a consumer report, must provide to the consumer a copy of that report and a summary of the applicant's rights under the FCRA.

21.     MFA uses a disclosure and authorization form which fails to meet the "clear and conspicuous disclosure . . . in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes" requirement Section 168lb(b)(2)(A)(i) of the FCRA.

22.     The forms used by MFA improperly attempted to use the disclosure to get the consumer to, among other things, waive his or her rights relating to the investigation of his or her background. MFA knows or should know that such liability waivers have been found contrary to direct guidance from the Federal Trade Commission and held by courts as contrary as void, unenforceable, and violative of the FCRA.[1] Even more basically, however, MFA's form fails to

---

[1] *See, e.g. Milbourne v. JRK Residential Am., LLC*, 92 F. Supp. 3d 425 (E.D. Va. 2015) (refusing to grant summary judgment on willfulness of decision to include waiver language in disclosure form); *Manuel v. Wells Fargo Bank, Nat'l Ass'n,* 123 F. Supp. 3d 810 (E.D. Va. 2015) (same); *see also Singleton v. Domino's Pizza, LLC,* No. DKC 11-1823, 2012 WL 245965, *9 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Avila v. NOW Health Group, Inc.,* No. 14 C 1551, 2014 WL 3537825, *2–3 (N.D. Ill. July 17, 2014); *Reardon v. Closetmaid Corp.,* 2:08-cv-01730, 2013 WL 6231606, *10–11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance")*Massey v. OnSite Mgr., Inc.,* No. 11 Civ. 2612(BMC), 2011 WL

meet the FCRA's requirements because it is not a stand-alone disclosure, but is buried near the end of a six-page employment application, and does not inform consumers that MFA intends to obtain a consumer report about them.

23.    Although MFA deems an applicant ineligible for hire based in whole or in part on Apex's consumer reports, it does not notify the applicant of that fact until after the decision not to hire has been finalized. MFA does not provide pre-adverse action notice to job applicants, together with a copy of the applicant's consumer report and a description of the applicant's rights as required by 15 U.S.C. § 1681b(b)(3).

24.    MFA's violations of the FCRA have been willful, wanton, and reckless in that it knew, or should have known, that it was failing to comply with the requirements of the FCRA. The requirements of users of reports in the employment context are widely publicized in court decisions, opinions from the FTC and CFPB, and other readily available resources.

25.    MFA's willful disregard of its duties violates the FCRA as a matter of law, and it exacts serious consequences on job applicants and interstate commerce. The natural result of MFA's failures to abide by the conditions, procedures and limitations of the FCRA prejudices consumers' ability to challenge information contained in consumer reports provided to MFA.

## THE EXPERIENCE OF THE REPRESENTATIVE PLAINTIFFS

### A.    Plaintiff Bartlow

26.    Near the beginning of June 2015, Ms. Bartlow applied for and was interviewed for a Registered Nurse position at MFA's Parham Health and Rehabilitation Facility in Richmond.

---

4356380, *3–5 (E.D.N.Y. Sept. 16, 2011) (denying defendant's attempt to enforce waiver as to plaintiff's FCRA claim for willful conduct).

27.    Around June 11, 2015, MFA's representative phoned Plaintiff Bartlow and offered her the RN position, which was then formally offered, by email, the next day. Attached to the email were several forms for Plaintiff to complete, including a one purporting to authorize MFA to conduct a criminal background check on her. Plaintiff Bartlow was to start work June 29.

28.    MFA's authorization form simply stated that the applicant "authorize[s] MFA to conduct a background check. This includes but is not limited to a criminal record check."

29.    Within the same form ("HR-211"), this language is further explained with the statement, "I also understand that if I am hired, state law requires that the facility obtain an original criminal history record from the State Police Central Criminal Records Exchange."

30.    Assuming that this statement is the FCRA mandated disclosure that an employment-purposed consumer report will be obtained about the applicant, it fails to meet that requirement because it does not state that a *consumer report* will be obtained. At best, it informs the applicant that some sort of investigation will occur, but not that an FCRA-governed consumer report will be part of it. MFA therefore obtained a consumer report on Plaintiff Bartlow and thousands of other applicants without properly having their written authorization to do so.

31.    Plaintiff Bartlow completed the forms and returned them to MFA's representative. On June 28, that individual emailed Plaintiff Bartlow and stated that MFA was rescinding her job offer because of information on her Apex background report. The MFA representative did not state specifically what disqualified Plaintiff Bartlow from employment, nor did she or anyone at MFA share the Apex report with Plaintiff Bartlow.

32.     Beginning on June 30, Plaintiff Bartlow left at least three voicemail messages with MFA's representative requesting her Apex report, to no avail. On approximately July 7, Plaintiff Bartlow emailed MFA's representative and reiterated her request for her Apex report.

33.     On July 10, twelve days after MFA denied her employment based on the contents of the Apex report, Plaintiff Bartlow finally received a copy of that report from MFA, and also a copy of a State Police Records Exchange dated June 26, 2015. The Apex background report contained several inaccuracies and was materially incomplete, including the furnishing of a criminal record that Plaintiff Bartlow had expunged in 2013.

34.     MFA took an adverse action against Plaintiff Bartlow by denying her employment, and it took that adverse action based on the contents of an FCRA-governed consumer report without first providing to Plaintiff Bartlow a copy of that report and a summary of her FCRA rights.

**B.      Plaintiff McBride**

35.     Plaintiff McBride applied for a position as a cook at MFA's Norfolk Rehabilitation Center in August 2015. As part of the application process, Mr. McBride completed a lengthy application over the Internet. (The "McBride Online Application").

36.     At the end of that application, on a page that is the continuance of a single, unified application document, is the heading **"PLEASE READ CAREFULLY BEFORE SUBMITTING APPLICATION."** A paragraph follows that phrase that attempts to obtain from the applicant assurances that the information in the application is accurate and purporting to authorize an investigation into the applicant's background.

37.     The final line of that paragraph reads:

8

MFA is hereby authorized to make any investigation of my personal history, criminal record, and any other information provided on this application. I release MFA, its owners, agents, and associates, as well as any party which provides information to MFA, from any liability arising out of such investigation and the disclosure of such information.

38.     Assuming that this statement is the FCRA mandated disclosure that an employment-purposed consumer report will be obtained about the applicant, it fails to meet that requirement because it does not state that a *consumer report* will be obtained. At best, it informs the applicant that some sort of investigation will occur, but not that an FCRA-governed consumer report will be part of it. MFA therefore obtained a consumer report on Mr. McBride and thousands of other applicants without properly having their written authorization to do so.

39.     Moreover, the application fails to meet the FCRA's requirement that employers like MFA make a "clear and conspicuous" disclosure that they may obtain consumer reports about them for employment purposes in a stand-alone document "that consists solely of the disclosure." MFA's disclosure is not clear or conspicuous, and it does not consist solely of the disclosure because it contains illegal waiver and other additional language.

40.     Despite the failures in its application materials, MFA ran a background check regarding Mr. McBride using the Virginia Criminal Information Network ("VCIN") (a direct governmental database), around August 24. Apparently satisfied with the contents of that background check, MFA offered Mr. McBride a job the same day.

41.     Sometime later, MFA purchased a consumer report on Mr. McBride from Apex. The Apex report was rife with duplicate entries of criminal information and a key inaccuracy and incomplete record—the reporting of a conviction for assault and battery that was reduced to disorderly conduct after an appeal. MFA rescinded Mr. McBride's job offer because of the

assault and battery conviction, but did not provide him with a copy of the Apex report before it did so.

42.     MFA did provide Mr. McBride with the background check from VCIN, which included an accurate entry of the disorderly conduct record, but did not provide Mr. McBride with any notice of its intent to take an adverse action against him or of the APEX report and mandated Summary of FCRA rights. After much effort, Mr. McBride eventually convinced MFA to provide him with the Apex report. By that time, it was too late for him to be hired by MFA.

43.     MFA therefore took an adverse action against Mr. McBride by denying him employment, and it took that adverse action based in whole or in part on the contents of his report by Apex.

### DEFENDANT ACTED WILLFULLY

44.     Plaintiffs and Class Members have a common-law right to keep their personal information from being distributed and used without their knowledge, and Congress sought to enhance the protection of that right by enacting the FCRA and incorporating into its many consumer-oriented safeguards the restriction that consumer reports only be distributed for listed reasons "and no other." Indeed, the FCRA preempts the common-law tort of intrusion upon seclusion, and the Act expresses Congress's finding of "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. § 1681a(4).

45.     Defendant invaded Plaintiffs and the Class Members' right to privacy when it provided their highly confidential personal information at a time when it had no right to do so.

46.     The conduct that Defendant engaged in of precisely the type that Congress sought to prevent with restrictions it has imposed on access to consumers' sensitive, personal information.

47.     Plaintiffs and Class Members therefore suffered a concrete, in-fact injury that is directly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision here.

48.     Plaintiffs and Class Members have a statutory and common-law right to know of the information that entities like Apex report about them, and Congress sought to enhance the protection of that right by enacting the FCRA and incorporating into its many consumer-oriented safeguards requirements that consumers receive notice when information is reported for employment purposes. Indeed, the FCRA expresses Congress's mandate that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b) (emphasis added).

49.     Defendant violated Plaintiffs and the Class Members' right to notice when it obtained their highly confidential personal information, and then took an adverse action based on that personal information without first providing Plaintiffs and Class Members an opportunity to dispute or discuss the information that served as the basis for those decisions.

50.     The conduct that Defendant engaged in of precisely the type that Congress sought to prevent with restrictions it has imposed on access to consumers' sensitive, personal information.

11

51. Plaintiffs and Class Members therefore suffered a concrete, in-fact injury that is directly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision here.

52. MFA knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA, judicial decisions interpreting the Act, and in the promulgations of the Federal Trade Commission.

53. MFA obtained or had available substantial written materials and FTC guidance, which apprised it of its duties under the FCRA.

## CLASS ACTION ALLEGATIONS

### PLAINTIFFS' PROPOSED CLASSES

54. Plaintiffs bring this action on a class basis, with initial class definitions that follow.

55. *The Pre-Adverse Action Class, July 6, 2014 through the present.* Plaintiffs bring this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedures, on behalf of the following "Pre-Adverse Action Class," of which they are a member, initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who were employees of MFA or who applied for an employment position with MFA (b) as part of this application process were the subject of a consumer report used by MFA on or after July 6, 2014 and through the pendency of this action (c) where that consumer report contained an item that would disqualify the person from such position under MFA's hiring policies, (d) which consumer was not then approved or hired for the position, (e) and to whom MFA did not provide a copy of the consumer report and the FCRA Summary of Rights at least five business days before the date the employment decision was adjudicated.

56.    *The Impermissible Use Class, July 6, 2014 through the present.* Plaintiffs bring this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedures, on behalf of the following "Impermissible Use Class," of which they are a member, initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who were employees of MFA or who applied for an employment position with MFA (b) as part of this application process (c) MFA procured or caused to be procured a consumer report for employment purposes (d) in materially the same form as HR-211/211A and/or the McBride Online Application.

57.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, the putative Classes exceed 100 members each, making joinder of all members impracticable. The names and addresses of the class members are identifiable through the internal business records maintained by Defendant and the class members may be notified of the pendency of this action by published and/or mailed notice.

58.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members, including:

a.    Whether the uniform failure to provide timely a copy of employment purposed consumer reports containing a negative public record violated the FCRA;

b.    Whether the timing of Defendant's notice to consumers that employment may be declined or terminated based in whole or in part on information contained in a consumer report satisfies the timing requirements at 15 U.S.C. § 1681b(b)(3);

c.    Whether the discrete disclosure and authorization satisfied the FCRA's disclosure requirements at 15 U.S.C. §1681b(b)(2);

d.    Whether Defendants' violations of the FCRA were "willful."

59.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative Class Member. Plaintiffs, as well as every punitive class member, allege violations of the same FCRA provisions, 15 U.S.C. §§ 1681b(b). These claims challenge Defendants' hiring and consumer-report-furnishing procedures as they relate to a definable group of consumers—MFA employees and applicants. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

60.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative Classes, because their interests coincide with, and are not antagonistic to, the interests of the members of the Classes they seek to represent; they have retained Counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs and their Counsel will fairly and adequately protect the interests of the members of the Classes. Neither Plaintiffs nor their Counsel have any interests that might cause them not to vigorously pursue this action.

61.     **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the class members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit.  It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore,

14

individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

## COUNT ONE – CLASS CLAIM
### Failure to Provide Pre-Adverse Action Notice – Copy of Report
### 15 U.S.C. § 1681b(b)(3)(A)

62.     Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

63.     MFA willfully violated 15 U.S.C. § 1681b(b)(3)(A) by failing to provide a copy of the consumer report used to make an employment decision and the FCRA Summary of Rights to Plaintiffs and the Pre-Adverse Action Class Members before taking adverse action that was based in whole or in part on that report.

64.     Plaintiffs and the Class Members seek statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

65.     Plaintiffs and the Class Members also seek punitive damages for this violation pursuant to 15 U.S.C. § 1681n(a)(2) and equitable and/or injunctive relief.

66.     Plaintiffs' counsel seeks attorneys' fees and costs pursuant to Fed. R. Civ. P. 23(b) and 15 U.S.C. §§ 1681o and 1681n.

## COUNT TWO – CLASS CLAIM
### Impermissible Use – 15 U.S.C. § 1681b(b)(2)

67.     Plaintiffs incorporate by reference those paragraphs set out above as though fully set forth herein.

68.     The FCRA requires that employers advise applicants of their intent to obtain employment-purposed consumer reports about them in a "clear and conspicuous" document that consists solely of the disclosure and obtained their written authorization to do so.

69.     MFA accessed – obtained and used – the consumer report of each Plaintiff and each Impermissible Use Class member without satisfying these requirements.

70.     MFA's disclosure therefore violated Section 1681b(b)(2) as to the Plaintiffs and each Class member.

71.     This conduct, action, and inaction of MFA were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

72.     Plaintiffs and other members of the putative Impermissible Use Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from MFA in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**WHEREFORE,** Plaintiffs and the putative Classes respectfully pray for the following relief:

A.  An order certifying the proposed classes herein pursuant to FED. R. CIV. P. 23 and appointing the undersigned counsel to represent same;

B.  The creation of a common fund available to provide notice of and remedy Defendants' unlawful conduct;

C.  That judgment be entered for Plaintiff individually for actual and/or statutory damages and punitive damages against Defendant for its violations as alleged herein, pursuant to 15 U.S.C. §§ 1681n and 1681o;

D.  Statutory and punitive damages for all class claims;

E.  Equitable and/or injunctive relief;

F. Attorneys' fees, expenses and costs; and

G. Pre-judgment and post-judgment interest as provided by law.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**THERESA BARTLOW and ROBERT
MCBRIDE,** *individually and
on behalf of and all others similarly situated*

By:_____
Leonard A. Bennett, VSB No. 37523
Susan M. Rotkis, VSB No. 40693
Craig C. Marchiando VSB No. 89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com
Email: craig@clalegal.com


Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
**KELLY & CRANDALL, PLC**
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
E-mail: kkelly@kellyandcrandall.com
E-mail: aguzzo@kellyandcrandall.com

*Attorneys for the Plaintiffs*